**[Cite as *In re K.Y.*, 2019-Ohio-344.]**

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. Earle E. Wise, Jr., P. J.<br>Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| K.Y. | Case No. 2018 CA 0066 |
|  | O P I N I O N |


CHARACTER OF PROCEEDING:  Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. C2018-0145

JUDGMENT:         Affirmed

DATE OF JUDGMENT ENTRY:  February 4, 2019

APPEARANCES:

For Appellant Mother      For Appellee LCJFS

MICHAEL R. DALSANTO    WILLIAM C. HAYES
33 West Main Street, Suite 109  PROSECUTING ATTORNEY
Newark, Ohio  43055     NATALIE A. NOYES
             ASSISTANT PROSECUTOR
Guardian Ad Litem for Mother  20 South Second Street, 4th Floor
             Newark, Ohio  43055
JERMAINE LAMAR COLQUITT
35 East Gay Street, Suite 212-A
Columbus, Ohio  43215    For Father

Guardian Ad Litem for K.Y.   SCOTT SIDNER
             55 South Main Street, Suite C
BONNIE VANGELOFF     Johnstown, Ohio  43031
Post Office Box 4174
Dublin, Ohio  43016

*Wise, John, J.*

{¶ 1} Appellant-Mother, A.C., appeals the decision of the Court of Common Pleas of Licking County, Ohio, Juvenile Division, finding that her minor child, K.Y., was a dependent child.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} K.Y. is a ten-year-old child. In February 2018, he resided with his Mother, A.C., in Newark, Ohio. K.Y.'s Father, M.Y., was incarcerated at that time with a release date of November, 2018.

{¶ 3} Throughout the month of February, the Agency received multiple complaints about Appellant-Mother. Intake Social Worker, Katie James, was sent to investigate. The initial claims were that Appellant-Mother had severe mental health problems, and that she was struggling to differentiate reality and fiction. Upon her first meeting with Social Worker James, Appellant-Mother denied the allegations. But she did admit to a history of substance abuse as well as recent drug use, including methamphetamine and marijuana, which caused concern for the Social Worker. There were more referrals made to the Agency regarding a series of calls to law enforcement, including an incident where fire investigators were not able to do their job in investigating a fire at Appellant-Mother's home. The lead investigator called the Agency. A different social worker, in a capacity as the on-call social worker, approved a plan to keep K.Y. with his grandparents who lived across the street.

{¶ 4} Upon her return to the office, Social Worker James became aware of the fire incident. She also reviewed records of other calls made to law enforcement. K.Y.'s

school records also revealed he was missing a large amount of school and could be on the verge of not advancing with his class.

{¶ 5} On February 21, 2018, the Licking County Job and Family Services, Children Services Division (hereinafter "the Agency") was granted an ex parte order due to concerns with Father's incarceration, Mother's mental health, erratic behavior, and concerns of substance abuse.

{¶ 6} Upon being presented with the Order, Appellant-Mother's behavior escalated. She followed the social worker to K.Y.'s school, driving erratically and nearly striking the social worker's car. She then proceeded to attempt entry into the school. The school was placed into lockdown and police had to assist Social Worker James in transporting K.Y. to the Agency.

{¶ 7} On February 22, 2018, a Complaint was filed and an Emergency Shelter Care hearing was held. Based upon the information provided to the Magistrate by the Agency and the agreement of the Guardian ad Litem, K.Y. was placed in the emergency shelter care custody of the Agency. Appellant-Mother was present for this hearing. Appellant-Mother was able to request an attorney and was advised of her rights.

{¶ 8} A contested adjudicatory hearing was set for April 13, 2018. However, this hearing was ultimately continued at the request of Mother's Guardian ad Litem. Adjudication was reset for May 10, 2018, with a Dispositional hearing set for May 21, 2018.

{¶ 9} On May 10, 2018, the first adjudicatory hearing was held in this matter. The State offered three witnesses on that day. First was Timothy Smith, a Newark Fire Department Investigator involved with the fire investigation at Appellant-Mother's home.

He testified to her erratic behavior, describing her as "extremely agitated". (T. at 15-16). He also recalled that she mentioned a government conspiracy. He stated that she refused to identify the location of the firearms in the home. (T. at 15-16). He stated that he contacted the Newark Police Department to make a referral to Licking County Children's Services because he felt that the minor child was not in a safe environment. (T. at 20).

{¶ 10} Second was Carla Messina, maternal grandmother to K.Y. She testified about Appellant-Mother's erratic behavior, past drug abuse, and concern that K.Y. was not attending school or being treated appropriately at home.

{¶ 11} The third witness was Social Worker James, who outlined her investigation as well as the dangerous behavior exhibited by Mother following the ex parte order. The State intended to call Appellant-Mother but ran out of time for that day. All parties were aware that the continuation was set for May 15, 2018.

{¶ 12} Although most of the hearing had already been completed, Appellant-Mother requested the court appoint her new counsel. The request was denied due to the immediacy of the hearing. However, a second attorney was provided to Appellant-Mother.

{¶ 13} Appellant-Mother failed to appear on May 15, 2018.

{¶ 14} She did appear on May 21, 2018, but upon learning she would be called to testify, Appellant-Mother left the Courthouse. At that time, the State rested its case and the court made a finding of dependency.

{¶ 15} Appellant-Mother was given notice that the Dispositional hearing would take place June 5, 2018.

{¶ 16} On June 5, 2018, Appellant-Mother again failed to appear. K.Y. was placed in the temporary custody of the Agency.

**{¶ 17}** In the interim, Maternal Grandmother and Step-Grandfather had filed a Motion to intervene. While this was denied, a hearing was set for August 8, 2018 based upon a Motion for Legal Custody, or in the alternative Temporary Custody, filed by Maternal Grandparents.

**{¶ 18}** At the hearing on August 8, 2018, it was determined that Maternal Grandparents would have temporary custody, with an Order of Protective Supervision reserved to the Agency. K.Y. has been with his grandparents since that time.

**{¶ 19}** Appellant-Mother's counsel filed an Objection to the Magistrate's Decision on June 15, 2018. The Objections were denied on August 7, 2018.

**{¶ 20}** Appellant-Mother now appeals, assigning the following error for review:

## ASSIGNMENT OF ERROR

**{¶ 21}** "I. THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES FAILED TO MEET ITS BURDEN TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT K.Y. WAS A DEPENDENT CHILD AND THE TRIAL COURT ERRED IN SO FINDING."

### I.

**{¶ 22}** Appellant herein argues the trial court erred in finding K.Y. to be dependent. We disagree.

**{¶ 23}** Pursuant to R.C. §2151.35(A), a trial court must find that a child is an abused, neglected, or dependent child by clear and convincing evidence. *In the Matter of F.M. and M.M.,* 5th Dist. Tuscarawas No. 2011 AP 07 0029, 2012-Ohio-1082. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,*

161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶ 24}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶ 25}** In the case *sub judice*, the trial court found K.Y. to be dependent under R.C. §2151.04(C). As used in this chapter, "dependent child" means any child: .... (C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."

**{¶ 26}** A finding of dependency under R.C. §2151.04 focuses on whether the child is receiving proper care and support; the focus is on the condition of the child. *In re Walling,* 1st Dist. No. C-050646, 2006-Ohio-810, ¶ 16 citing, *In re Bibb*, 70 Ohio App.2d 117, 120, 435 N.E.2d 96 (1st Dist. 1980).

**{¶ 27}** Therefore, the determination must be based on the condition or environment of the child, not the fault of the parents. *In re Bishop*, 36 Ohio App.3d 123,

124, 521 N.E.2d 838 (5th Dist. 1987); *In re Birchfield,* 51 Ohio App.3d 148, 156, 555 N.E.2d 325 (4th Dist. 1988). "That being said, a court may consider a parent's conduct insofar as it forms part of the child's environment. See *In re Burrell*, 58 Ohio St.2d 37, 39, 388 N.E.2d 738 (1979). The parent's conduct is significant if it is demonstrated to have an adverse impact on the child sufficient to warrant state intervention." *In re Ohm,* 4th Dist. 206-Ohio-Hocking No. 05CA1, 2005-Ohio-3500 at ¶ 21. *See, also*, *In re: Colaner,* 166 Ohio App.3d 355, 360, 2006-Ohio-2404, 850 N.E.2d 794, 798 (5th District). Further, in issues of dependency determination, "the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm." *In re Burchfield,* 51 Ohio App.3d 148, 156, 555 N.E.2d 325 (4th Dist.1988)

**{¶ 28}** Upon review, we find competent and credible evidence exists in this case to support the conclusion that K.Y. is a dependent child pursuant to R.C. §2151.04(C), a child whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship.

**{¶ 29}** Appellant-Mother, in her initial interview with Social Worker James admitted to having a history of drug abuse which included using methamphetamines and marijuana. Reports were made to the Agency that Appellant-Mother was suffering from severe mental problems and had trouble differentiating between reality and fiction. Three separate witnesses testified as to Appellant-Mother's erratic behavior as set forth above. Appellant-Mother's mother testified that her daughter had a drug problem that was "getting really bad" and that she was exhibiting paranoid behavior. (T. at 38). She testified that she had called Children's Services on a number of past occasions concerning her daughter's drug use. (T. at 45-46). Ms. James testified that the Agency received reports

that Appellant-Mother believed that video games were real, that the Illuminati is real, and that the "mob" is out to get her.. (T. at 63).

{¶ 30} Testimony was also presented that while K.Y. is a bright child, he was missing a significant number of school days and was in jeopardy of not advancing.

{¶ 31} Based on the foregoing, we find that the trial court did not err in finding K.Y. to be a dependent child.

{¶ 32} The decision of the Court of Common Pleas, Juvenile Division, Licking County, Ohio, is affirmed.


By: Wise, John, J.

Wise, Earle, P. J., and

Delaney, J., concur.


JWW/d 0117